Order 77060, General Announcements against the Department of Veterans Affairs. Ms. Sesson, will you please come forward? My name is Heather Sesson and I'm here on behalf of the Veterans Presenting. And we have a couple issues on the field this morning. I'll go ahead and take the first one in order. Our first issue is whether or not a case is involving clear and unmistakable error, if the definition of an error that manifestly changed the outcome is dependent, as a matter of law, on the underlying type of claim presented. And specifically... You could have decided that issue. Is that right? Your Honor, I don't think we specifically decided that issue. I think the winner's case discusses the context of new material evidence and separation between a reopening claim and a service connection claim. But this is in the context of Q, and I don't believe there is a decision on that issue. Unless you can think of one. I'm not aware of one. I feel like this was... It seems like an issue that should have been decided by now. It seems pretty straightforward. And basically our argument is simply that when you're talking about a Q claim, you're talking about clear and unmistakable error. The outcome that has to manifestly be different has to depend upon what the underlying claim is. For example, if the underlying claim was for service connection, then when you're trying to claim Q later on in that decision, then the error that would have manifestly changed the outcome wouldn't have to necessarily result in service connection. Whereas, as in this case, when you're discussing a claim for reopening, the outcome really is whether or not the case would have been reopened, as opposed to whether or not the case would have actually resulted in service connection as well. So what's the result when you're succeeding on a Q claim that's directed to a request to reopen for new material evidence? What's the consequence of your succeeding on a claim like that? Essentially, the claim has to be reopened. And then it would have to be remanded for further proceedings to determine whether or not it was necessarily service connected. And that's because there are certain types of evidence, as in this case with Wacker-Lang's opinion in October 1954, where that might not necessarily have been enough to actually prove service connection, but it might have been enough to reopen the case. So what if some of the evidence being offered didn't exist in 1954? Could that be considered as part of the reopening? Well, I think it has to go back to what was in order to get Q on that specific decision, you have to look at what was in front of that court at the time. So, for instance, in this particular case, when we're talking about... So you'd have to say, take the new material evidence, whatever the VA had in front of it in 1954, it has to be determined whether that was sufficient to establish service connection. Right, that they have to determine whether or not... Right, because there could be new material evidence submitted since then, and obviously then you would have a question of whether or not that's a Q claim in those later decisions. But, for instance, in this case, when you're talking about the October 1954 decision in Mr. Jennings' case, for example, that was a claim to reopen. And so you'd have to look at what the evidence was submitted at that time, whether or not that was sufficient to reopen the claim, and then the RO would then have to rejudicate whether or not it was actually sufficient for service connection. Based on the evidence that was available in 1954. Right, in order for the Q claim purposes, yes. No, no, that's what I'm saying. Once you establish Q, and they made an error by not reopening the claim, you'd still have to be limited to the evidence that was available in 1954 in adjudicating the claim of service connection. I believe so, Your Honor. And let me go ahead and address, while we're talking specifically about the October 1954 decision, let me go ahead and address the claims that were put forth by the Secretary regarding the factual basis. The Secretary essentially claimed that the September 1954 decision wasn't actually final, and so therefore the October 1954 decision wasn't actually claimed to reopen in an effort to essentially pull the verbal rug out from under our legal argument on the Q. However, as addressed both in the reply brief, our argument is that the September 1954 decision was actually final at that time. And that, I think, is supported both by the record where the RO's decision in October 1954 explicitly discussed whether or not Dr. Lange's opinion was actually new material evidence, and then the BDA actually also decided in its 2003 opinion that both the September 1954 decision and the October 1954 decision were final, and the CDC followed that suit. Our contention is there is no support in the record to say that that is not, that the September 1954 decision was not final, and therefore the October 1954 decision would necessarily have to have been a claim to reopen. Well, I guess I don't understand the illogical position that the government has taken and that you seem to be accepting. In 1998, they finally decided, yes, there was service connection. And the service took place in the 1950s, in 1952. Let's just assume, I don't know why that decision was made in 1998. It's not under dispute. But let's just say that there were new equipment, new understanding of the science, new techniques, and so on. They had to have been wrong in 1954. If there was service connection in 1952, based on what happened during the service, then the board had to be wrong when they said there's no service connection, even if the evidence before the board supported that decision. And that's really, I think, why you're asking for the retroactivity. But you seem to have contradictory positions that are not reconcilable. Well, I believe the 1998 decision actually found, based on Dr. Lange's opinion in October of 1954, that we should have gotten service connection. So that's part of the connection here is that, essentially, the RO, instead of considering Dr. Lange's decision on its merits necessarily, was actually determining whether or not there was no material evidence and found erroneously that it wasn't. In this case, it's one of those issues where the later service connection was based upon Dr. Lange's assertions, because Dr. Lange's assertions were that Mr. Jennings did not have colitis prior to entering service. And the original decision in September of 1954 was that he had actually had colitis prior to entering service. And so that's part of what the 1998 decision was based upon was Dr. Lange's opinion, or his statements regarding the fact that he had treated the veteran prior to service and that he hadn't had colitis prior to service in contradiction to the September of 1954 decision that occurred. Does that clarify some of the... Well, yes, but let's just also say, because that's the record before us about that time, and when the initial decision was made that it was not service connection or else that it was a pre-existing condition or whatever it was, that it was supportable on the record. And so what happened since 50 years later or 40 years later, apparently it got worse and worse, were those factors considered in reviewing whether retrospectively a different decision should have been reached, or in fact, I thought I heard you say that it was supportable in 1954, the decision of no service connection, that how could you overcome that if it was in fact supportable? Well, Your Honor, I'm sorry. I guess our understanding is that for the purposes of the Hugh claim, specifically what you have to consider is whether or not the underlying outcome has changed. Now, when you're talking about a claim to reopen and you're talking about a Hugh claim specific to, for instance, 1954, you have to look at what the evidence is in order to reopen that claim. Now, when it gets remanded back down, your RO is going to be considering whether or not the service connection should have occurred in 1954, but I believe at the point at which you're actually doing service connection, then when it gets remanded back down, you're going to have to look at whether or not, because you're going back to the present, back to 1954, whether or not there are staged ratings and all of those things that apply with a regular service connection claim, because you do have additional evidence that's coming since then. Now, the question of whether or not there is service connection in 1954 or whether or not there was error for purchase of Hugh when we opened. Clear and unmistakable error. Clear and unmistakable. That's the real problem, isn't it? If the standard is, was there a clear and unmistakable error in 1954, that's very hard to overcome, even though it's now agreed by everybody that, in fact, the decision was wrong. Well, and I guess our problem here is that in order to get basically that service connection back to 1954, you have to use the correct standard. And what the BVA in this case was doing in 2003 was essentially using the incorrect standard of requiring that, or the CDC and the BVA, using the incorrect standard of requiring that the veteran was also able to prove service connection. Now, in this particular case, I think when you go back to 1954, our convention has been below, and although it's not particularly on appeal now since our issue is just simply that you have to be able to apply the Q standard according to what the actual underlying claim is. But our claim below was that Dr. Lange's opinion did support service connection at that time, and, in fact, that was part of the basis for why Mr. Lange originally pursued service connection in the 90s as well. If there are no further questions on that issue, I'll go ahead and address our second issue on appeal. And our second issue on appeal is whether or not the Board of Veterans' Appeals is required as a matter of law to use terms of art when it's addressing its standards of review. And our argument on this is essentially that under the BVA's reasons and basis requirement, and under the requirement of the CDC to be able to review whether or not the BVA is actually applying the correct standards, that the BVA is, as a matter of law, required to use specific terms of art such as clear and unmistakable error and things like no material evidence in their correct terminology when they're going through and doing their analysis because to not do so impedes the public review of those issues because they're not sure whether or not those standards have been correctly applied, which is part of the CDC's requirement when they're looking at the BVA's opinion. And so our argument on that is that, as a matter of law, we'd like this Court to come out with an opinion that explicitly directs that the BVA essentially has to correctly use those terms of art in the context of their decisions, whereas the CDC in this decision has essentially said that was not required. Counsel, has this or any other court ever ordered the lower court to use specific terms in drafting its judgment? Your Honor, I think that generally it's accepted that because when you're talking about specific terms of art in the legal context, that the lower courts need to use those, otherwise it's unclear on appeal whether or not those standards have been applied. In this particular case, I believe in this system, the regional office has not necessarily been required to use specific terms of art in its decisions. However, I know, for instance, there's some analogous cases such as Kent that require that specific terms of art be used in notice for the purpose of the veteran's ability to be on notice about what his obligations are. So there has been movement in that specific direction. I think because the CDC is required to determine whether or not the BVA is actually applying its correct standards, I think it's important that the BVA use the correct terminology so that we understand exactly what they're doing when they come up with their decisions. Otherwise, the CDC is put in a position where they're basically guessing whether or not the correct standard was applied, or they're put in a position of making their own factual determinations as to whether or not the BVA had applied its standards correctly to the facts of the case. Yeah, but the problem with the Cherokee regime is that it leads to nitpicking of decisions to find some terrible language that leads to a reversal. Well, I won't deny that, and I'm sure that that will probably occur to a certain extent. However, depending on which terms you're looking at in the case. But I don't think in this context that it's out of line to require that the BVA actually specifically use the terminology, because there is certain types of terminology that needs to be used. There are no stateful evidence, the new material evidence that have particular definitions within the context of the veteran's claim system, and those are really the standards that are important for the purposes of whether or not the CDC can determine if the BVA is following their directions. So, is there a note for me? We're exhausting your time. Let's hear it from the other side. Good morning, Your Honors. May it please the Court. I'd like to first address the argument that we had made in our brief regarding the finality of the September 1954 regional office decision. Because you're talking about the context of that. Sure. I understand your argument about the finality. But if there had been an appeal in the decision of the RO, I don't know what it's called, RO, assuming the decision of the RO were final, do you agree that under Q you could establish the right to relief by showing that they should have been open for new material evidence without having to actually show that the benefits would have been awarded? No, Your Honor. We believe that the veteran is required to show that there would be a change in the merits outcome. In this case, this Court has not addressed this issue specifically. There is a veteran's court decision that does address this case specifically called Krippen v. Brown. But the reason for that is that it preserves the finality of the adjudication process, except where substantive rights would be affected. The purpose of Q is to award benefits when it's clear on the record the benefits should be awarded. So in order to have a successful Q claim, it's not enough for the veteran to show that the claim should have been reopened. The veteran must also show that that reopening would have resulted in an award of benefits. Would it have resulted in it, or would it have been clear and unmistakable error not to award benefits if the additional evidence had been considered? I think, Your Honor, that the veteran would have to show that it was clear and unmistakable error not to award benefits in light of the new material evidence that was presented. So we assume that burden was met in 1998? In 1995, Mr. Jennings filed a claim to reopen the claim. He submitted new evidence, new testimony, new medical records, and the Department of Veterans Affairs awarded service connection effective 1998. The reason for that is that pursuant to 38 U.S.C. 5110, new evidence that a veteran presents can only establish prospective benefits. That is, the effective date is the date that the new material evidence is produced, not the date of the original claim. I think that may answer Your Honor's question that you raised earlier. Well, it really does, and that's exactly what I find troublesome because what they found is that this is connected with the service performed 50 years earlier. Yes, Your Honor, but the new material evidence that the veteran presented in 1995 and 1998 was not evidence that was before the VA in 1954. Well, what I'm saying, and I assume, in fact, that that was the case, although we didn't have the record, was that the science, perhaps, the understanding of the disease was more or less known than was known 40 years earlier. What they didn't say, they said, this is what you had in 1952. Yes, Your Honor, and again, it was based on medical records subsequent to 1954 and Mr. Jennings' testimony. But the VA is precluded by statute from awarding retroactive benefits. The only way that Mr. Jennings could have had benefits awarded retroactively to 1954 is if he were successful in his Q claim with respect to the September and October 1954 Regional Office decisions, which the Court of Appeals for Veterans Claims found that he did not meet that Q claim. But if, in fact, service connection has now been found, then wasn't there a clear and unmistakable error 40 years earlier and denied? No, Your Honor, based on the evidence that was before the VA in 1954. So your position is that if there's newly discovered evidence in 1998 that could not have possibly gotten before the Board in 1954, the veteran always would? Pursuant to 38 U.S.C. Section 5110, the VA, in finding new material evidence, can only award benefits on the date that the new material evidence was presented to the VA. There's no statutory authority to award benefits retroactive to 1954 unless the veteran pursues the other avenue to attack finality, which is a Q claim. And we've held that, haven't we? Yes. Yes, Your Honor. That's not new? No. No, Your Honor. So what happens in the new material evidence case? If somebody brings in new material evidence and the VA decides to reopen, is the reopen limited to the evidence that led to the reopen, or can the veteran bring in other evidence? The veteran could bring in other evidence. The VA could, and certainly post-BCAA, the VA might have some obligation to help with that claim. Is that true in 1954, too? If somebody raised a new material evidence claim and the VA said, well, there's new material evidence here, so we're going to reopen things up, the consideration wouldn't be limited to new evidence that led to the reopen? That I'm not sure about, Your Honor. I would be happy to brief that to the court, but I'm not sure of the answer to that right now. If the court has no questions about our finality argument that we raised in the brief, which we believe means that this court doesn't need to address this issue, because the September 1954 decision is clearly not final by operation of the law, then I will briefly address the second argument that Mr. Jennings made regarding requiring the board to use specific terms of art in writing judgments. The only case that Mr. Jennings cites for support in that is Kent, the Veterans Court decision. And Kent was in the context of a notice letter. The Veterans Court found that the VA had an obligation to provide a claimant with notice of what constituted new material evidence when a claim was disallowed. The reason for that, of course, is because the veteran has the burden of presenting new material evidence, and so the veteran needs to know what the character of evidence is that the VA will accept. Here, we're talking about two things. One, the board is presumed to be applying the correct law. But second, the presumption that we're talking about, the presumption of soundness and the presumption of aggravation, are presumptions that are applied in favor of the veteran. And it's the VA's burden to show that those two presumptions are rebutted. So we don't have the same issue of the veteran not understanding what is expected of him. That's the only case that Mr. Jennings cites for support of that claim. Clearly, we believe that there should be no magic words requirement for the board to do its analysis. The board clearly went through the analysis and discussed the factual basis it relied upon, namely that Mr. Jennings had this medical condition prior to service, and the doctor concluded that the condition had not only not been aggravated, but had actually been improved during service. And so that's the factual basis upon which the Veterans Court could conclude that the board applied the proper law. If this Court has no further questions, we respectfully request that this Court affirm the Veterans Court decision. Thank you. Do I get a second? May it please the Court? I was just going to, during the rebuttal here, offer it appears that there are some factual questions about the underlying 98 decision that I'm not sure that either side anticipated. And so part of the problem, I think, was some of your questions, Judge Newman, regarding whether or not the evidence was sufficient in 54 or not might be answered by adding some additional information to the record if the Court so desires. I was going to certainly offer that if the Court would like us to add that, and then perhaps follow the supplementary briefing after argument if that's more helpful to your questions, Your Honor. You agreed that success in 1998 doesn't mean that it was a clear and unmistakable error in the 1954 decision, right? I agree that depending on the circumstances, that's not necessarily true. And certainly that is a problem, I think, for an individual of case consideration. However, in Mr. Jennings' case specifically, his ultimate service connection was based primarily upon the Dr. Lange's opinion from October 54, which was in front of the Court at that time. So that would be what you say, is that that is evidence that if the thing was the element that he would have had success in the case? Right. Well, and I guess what we're trying to argue here is that essentially the BBA and the CBC essentially applied the wrong standard, that they required service connection – required reopening plus service connection, where that's not necessarily always necessary. Now, in certain cases, I think, depending on the facts, that might be how the case is determined. But I think that really the question is whether or not that should have been remanded to the RO for reconsideration of that initial evidence after it's been reopened. And in certain cases, like for instance in Mr. Jennings' perhaps, that whether or not ultimately he gets service connection back to 54 from the RO after it's been remanded, then would be a question for the RO. I think the question for this Court really is whether or not necessarily on a claim for reopening and your claim to, whether or not the standard is both service connection and reopening, or if it's just whether or not the claim – the difference would have been that the claim would have been reopened at that point. Right. Because the original claim would have been a service connection claim from September 54. Right. The problem here is that a month later, he ended up with a reopening claim. And so the question then is, because there's that short time period between the service connection and the reopening claim in this particular case, would be whether or not any information between those two would have been sufficient to reopen it. So why is it that it would be ignorant that it wasn't final, that it really wasn't a reopening claim? Because they were only considering evidence until the appeal period was up. Well, I think it's the general proposition that certainly the – it's the general proposition that if the acute claim that you're claiming is from a reopening claim, then the outcome has to be different. I understand that. I'm just saying it's not a reopening claim. I'm just saying that there wasn't anything to reopen until the time for appeal had come. Well, and I think that in this particular case, both the RO and VBA and the CABC treated that October 54 decision as a reopening claim. They treated that September 54 decision as final. And I encourage you to go back and look at the VBA decision specifically for that, because the VBA decision does specifically talk about that the September 54 decision and the October 54 decision were final. And that they were individually final. No notice of disagreement was filed within a year of either one of those. And so our argument would be that the Secretary's request that essentially you find that that wasn't a final decision in September 54 is really a request that having made an improper finding, in fact, that is not supportive of the record in this case. If there are no further questions, as I said, I just wanted to offer, since there seemed to be some clarification questions regarding the basis in this case in 1998 for the actual service connection, that if this court's desire is happy to add some of that information into the briefs and add any additional briefing if the court so desires. If we need it, we will request it. Thank you. Thank you, Mr. Chairman.